Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3030 | **DATE** | 7/30/2003 |
| **CASE TITLE** | RBC Mortgage Co. vs. Brent Couch | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to remand this action to Circuit Court of Cook County [7-1] is denied. Defendant's motion to transfer action to the District of Colorado [4-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 31 2003 | |
| ✓ | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | LC | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RBC MORTGAGE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 3030 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| BRENT COUCH, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
**JUL 3 1 2003**

## MEMORANDUM OPINION AND ORDER

Plaintiff RBC Mortgage Company ("RBC") filed suit in the Circuit Court of Cook County, Illinois against defendant Brent Couch ("Couch"), alleging that Couch breached an employment agreement by soliciting RBC's clients and employees and by disclosing confidential information. Couch moved for dismissal for lack of personal jurisdiction, which the Circuit Court denied, and then removed this case to federal court on the basis of diversity jurisdiction. RBC now moves to remand to state court for Couch's failure to timely remove the case. (R. 7-1.) In addition, Couch moves for an order transferring venue to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). (R. 4-1.) For the reasons set out herein, we deny both motions. (R. 7-1; 4-1.)

## RELEVANT FACTS

Couch was hired in an administrative capacity by First City Financial Corporation ("FCFC"), a Colorado corporation, in its Greeley, Colorado office in about May 1993. (R. 7, Pl.'s Mot. to Remand, Ex. 1, Pl.'s Complaint ¶ 16.) Approximately one year later, Couch requested and obtained a promotion to Loan Officer. (*Id.* at ¶ 17.) In February 1997 FCFC promoted Couch to Branch Manager, the highest position in any individual office and one with a

high degree of responsibility. (*Id.* at ¶ 18.) In about April 1999, FCFC was acquired by and became a subsidiary of Prism Financial Corporation ("Prism"), an Illinois corporation. (R. 9, Def.'s Mot. in Opp. to Pl.'s Mot. to Remand, Ex. 1, Couch Aff. ¶ 4.) In turn, Royal Bank of Canada ("RBC") acquired Prism and its subsidiaries (including FCFC) in April 2000. (R. 9, Def.'s Mot. at 2.) In a branding effort, RBC changed FCFC's name to RBC Mortgage Company.

Also in April 2000, Couch executed the Branch Manager Employment Agreement ("Agreement") with FCFC. (R. 7, Pl.'s Mot. to Remand, Ex. 1, Ex. A, Employment Agreement at 1.) Although the Agreement mentions only FCFC by name, relevant language in the text includes "its affiliates and parent companies," (*id.* at 2), and Couch was aware at the time of signing that FCFC was in a period of transition, (R. 9, Def.'s Mot. at 2). After nearly ten years with the company, Couch resigned from FCFC in the summer of 2002. (*Id.*) Essentially, RBC alleges that Couch raided the office of confidential information, clients and employees, allowing Couch to set up his own profitable mortgage lending business while forcing RBC to close its Greeley office. (*Id.*)

On August 27, 2002, RBC filed a complaint in the Circuit Court of Cook County, alleging: (1) breach of fiduciary duty; (2) breach of contract; (3) tortious interference with RBC's existing and prospective economic advantage; and (4) conversion. (*Id.*) The complaint prays the court to award "damages in an amount to be determined at trial" and "any other relief [the] Court deems just and appropriate," but also describes injury and damages exceeding $50,000 for each of Counts I, II and III. (R. 7, Pl.'s Mot. to Remand, Ex. 1, Compl. ¶¶ 45, 49, 57.) Additionally, RBC prays for injunctive relief on Count IV, seeking to recover from Couch a laptop computer allegedly containing RBC's confidential information. (*Id.* at ¶ 4.) On October 31, 2002, Couch filed a motion to dismiss for lack of personal jurisdiction, asserting that he did

not have sufficient minimum contacts with Illinois to subject him to personal jurisdiction in the state's courts. (R. 7, Pl.'s Mot. to Remand at 4.) The state court denied Couch's motion on March 7, 2003, finding that he had voluntarily submitted to jurisdiction in Illinois by the terms of the Agreement with FCFC. (R. 7, Pl.'s Mot. to Remand, Ex. 4.) Four days later, Couch requested an admission from RBC that it seeks to recover damages in excess of $75,000, which he received on April 7, 2003. (R. 7, Pl.'s Mot. to Remand at 4.) On May 6, 2003, Couch filed both a notice of removal and a motion to transfer this case to Colorado. (*Id.* at 5.) Presently before the Court are RBC's motion to remand, filed June 5, 2003, and Couch's motion to transfer.

## ANALYSIS

### I. Motion to Remand

RBC bases its motion to remand on Couch's alleged failure to follow proper procedures for removal. Removal is governed by 28 U.S.C. § 1446(b), which states in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . . If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). The party seeking to invoke federal diversity jurisdiction bears the burden of demonstrating that both the complete diversity and amount in controversy requirements are met. *Chase v. Stop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). In order to meet this burden, the defendant must support his allegations of jurisdiction with "competent proof," *id.* (*citing McNutt v. Gen. Motors Acceptance Corp., Inc.*, 298 U.S. 178 189 (1936)), the

3

definition of which is addressed by Local Rule 81.2. Local Rule 81.2 sets out specific filing guidelines, requiring that the notice of removal include:

> (2) with respect to at least one plaintiff in the Illinois action, either –
> (A) a response by such plaintiff to an interrogatory or interrogatories (see Ill. S.Ct. Rule 213) as to the amount in controversy, either (i) stating that the damages actually sought by that plaintiff exceed the jurisdictional amounts or (ii) declining to agree that the damage award to that plaintiff will in no event exceed the jurisdictional amount; or
> (B) an admission by such plaintiff in response to a request for admissions . . . conforming to the statement or declination to agree described in subparagraph (2)(A) of this rule. Receipt by the removing defendant or defendants of the response by a plaintiff referred to in subparagraph (2)(B) ... shall constitute the receipt of a "paper from which it may first be ascertained that the case is one which is or has become removable" within the meaning of 28 U.S.C. § 1446(b).

RBC first argues that the Court should remand this case because Couch failed to remove within 30 days of receipt of RBC's complaint. However, Couch submitted his removal notice within thirty days after receiving a requested admission from RBC asserting that it sought over $75,000. Thus, the critical question is: at what point did Couch *first* receive sufficient information that allowed him to determine whether the case was removable? *Huntsman Chem. Corp. v. Whitehorse Tech.*, No. 97 C 3842, 1997 WL 548043, at *6 (N.D. Ill. Sept. 2, 1997).

Generally, where the complaint does not articulate a specific *ad damnum*, the defendant is not on notice that more than $75,000 is in controversy, and the thirty-day time-clock does not start running until he receives an admission that the plaintiff is indeed seeking more than $75,000. *Height v. Southwest Airlines, Inc.*, No. 02 C 2854, 2002 WL 1759800, at *4 (N.D. Ill. July 29, 2002); *Abdishi v. Phillip Morris Inc.*, No. 98 C 1310, 1998 WL 311991, at *3 (N.D. Ill. June 4, 1998). However, in some cases the defendant is responsible for ascertaining from "a reasonable and commonsense reading" of the complaint whether the action is removable. *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 942 (N.D. Ill. 2002) (holding that defendant was put on notice that plaintiffs would seek more than $75,000 where complaint alleged that

4

plaintiffs, two of whom were minors, suffered "severe and permanent injuries, including paralysis, and sought damages for lost income."); *Huntsman*, 1997 WL 548043, at *6. The logic of this requirement follows from *Huntsman's* observation that "there is no reason to allow a defendant additional time if the presence of grounds for removal are unambiguous in light of the defendant's knowledge and the claims made in the initial complaint." *Huntsman*, 1997 WL 548043, at * 5 (*quoting Mielke v. Allstate Ins. Co.,* 472 F. Supp. 851 (E.D. Mich. 1979)). Yet, *McCoy* and related cases dealt solely with personal injury and product liability actions, all of which alleged "serious, permanent injuries and significant medical expenses." *McCoy*, 226 F. Supp. 2d at 941 (collecting cases). In such situations, it is indeed "unambiguous" that a plaintiff will seek more than $75,000. However, because we find no reason to extend *McCoy* past the unique circumstances of personal injury and extraordinary loss into the general universe of tort law, we find as a matter of law that the amount in controversy was not unambiguous from the face of RBC's complaint.[1] Thus, Couch filed his notice of removal in a timely manner.

RBC next contends that Couch waived his right to remove under the terms of the Agreement with FCFC. Where a contract provides that the parties consent to the jurisdiction of state or federal court within a particular region, however, the agreement does not constitute a waiver of a defendant's right to remove. *Newman/Hass Racing v. Unelko Corp.*, 813 F. Supp. 1345, 1347-48 (N.D. Ill. 1993) (*citing Oberweis Dairy, Inc. v. Maplehurst Farms, Inc.*, No. 88 C 4857, 1989 WL 2078, at *1 (N.D. Ill. Jan. 10, 1989)). Here, the pertinent Agreement language reads:

---

[1] RBC contends that, because it claimed damages exceeding $50,000 for each of Counts I, II and III, Couch should have aggregated these sums and concluded that the amount in controversy exceeded $75,000. (R. 12, Pl.'s Reply Mem. in Support of Mot. to Remand at 8-10.) While aggregation may be a valid consideration of *McCoy's* "reasonable and commonsense reading" requirement, we have limited *McCoy's* application to suits that allege severe and permanent injuries, significant medical expenses and lost income.

> Jurisdiction over disputes with regard to this Employment Agreement shall be exclusively in the Circuit Court of Cook County, Illinois, or any federal court seated in Cook County, Illinois, and this Employment Agreement shall be construed and interpreted in accordance with and governed by the substantive laws of the State of Illinois, notwithstanding the conflict of laws provisions of such laws. The parties hereto hereby submit to *in personum* [sic] jurisdiction in the Circuit Court of Cook County, Illinois, and any federal court seated in Cook County, Illinois. Notwithstanding the following, should First City seek injunctive relief against Branch Manager, First City shall be entitled to bring suit in any court having jurisdiction over the subject matter of the injunction.

(R. 7, Pl.'s Mot. to Remand, Ex. 1, Ex. A, Employment Agreement at 5.) It is clear from the face of the Agreement that the intent of the provision is to assure that the parties litigate disputes in Cook County, whether in state or federal court. Although RBC contends that the final sentence controls the remainder of the section, we disagree. That language provides RBC with more forums in which to seek injunctive relief, but does not control the forum issue generally. Thus, Couch did not waive his right to remove to federal court under the terms of the Agreement.

RBC also argues that because Couch's first removal notice alleged the parties' *residence* but not their *citizenship*, he did not satisfy his diversity jurisdiction burden. (R. 7, Pl.'s Mot. to Remand at 10.) We also find this argument unpersuasive. Although a court *may* dismiss on these grounds, it is under no obligation to do so. *Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996) (explaining that the court has two options: "to dismiss immediately for lack of jurisdiction, and to call for yet another round of jurisdictional filings.") In *Guaranty National*, upon which RBC relies, the court vacated and ordered dismissal because the litigants failed after multiple chances to establish diversity of citizenship. *Id.* In this case, Couch submitted an amended notice of removal on June 26 that specifically alleges diversity of citizenship, thus promptly rectifying the jurisdictional issue.

## II. Motion to Transfer

Because diversity jurisdiction is proper, we now turn to Couch's motion to disregard the forum selection clause contained in the Agreement and to transfer the case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). Motions to transfer are governed by federal law, even in diversity cases. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

First, we must determine whether the forum selection clause is enforceable. Both the Supreme Court and the Seventh Circuit hold that forum selection clauses are presumptively enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290 (7th Cir. 1989). To dispute enforcement, the challenger faces an uphill battle to show that it is unjust, unreasonable, or that "enforcement would contravene a strong public policy of the forum in which the suit is brought." *Bremen*, 407 U.S. at 15. Couch essentially contends that enforcement would be "unreasonable" because it would be inconvenient. (R. 4, Def.'s Mot. to Transfer at 13-14.) However, Couch has not satisfied the heavy burden of showing that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18. Next, Couch intimates that enforcement would be unjust because the parties did not bargain equally for the forum selection clause. (R. 4, Def.'s Mot. to Transfer at 14.) Again, this does not satisfy his burden; "mere inequality of bargaining power does not of itself make every term of the contract unconscionable." *N.W. Nat'l Ins. Co. v. Donovan*, 916

F.2d 372, 377 (7th Cir. 1990) (*quoting Bastian v. Wausau Homes, Inc.*, 635 F. Supp. 201, 203-04 (N.D. Ill.1986)). Thus, the forum selection clause is valid and enforceable.

By signing a valid and enforceable forum selection clause, Couch waived his right to move for transfer on the ground of inconvenience to himself. *Northwestern*, 916 F.2d at 378; *Heller*, 883 F.2d at 1293; *Photogen, Inc. v. Wolf*, No. 00 C 5841, 2001 WL 477226, at *2 (N.D. Ill. May 7, 2001). Thus, the only arguments we need consider in support of the motion to transfer are inconvenience to third parties (here, the defense witnesses) or to the judicial system itself. *Northwestern*, 916 F.2d at 378.

In balancing the convenience of witnesses against enforcement of a forum selection clause, we consider primarily the number of witnesses in each district along with the nature and importance of their testimony. *Photogen*, 2001 WL 4772266, at *2 (*citing Household Fin. Serv., Inc. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *4 (N.D. Ill. Sept. 27, 1999)). Here, Couch intends to call eleven witnesses, all employees that RBC alleges Couch recruited to work at his new venture. (R. 4, Def.'s Mot. to Transfer at 9.) Couch further emphasizes that RBC's potential witnesses, all employees of RBC, either live in Colorado or frequently travel to Colorado for business. (*Id.*) Although we are sympathetic to the logistical and financial inconveniences Couch or his witnesses may incur, we find this reason insufficient to abrogate the Agreement's forum selection clause. Because there is every indication that each of these eleven witnesses will provide nearly identical testimony, (R. 4, Def.'s Mot. to Transfer at 9), it is disingenuous for Couch to argue inconvenience based on the sheer number of his witnesses. Furthermore, easy air transportation and other modern conveniences render litigation in a major metropolitan area relatively simple. *Nissan Motor Co., Ltd. v. BMW (US) Holding Corp.*, No. 02 C 1245, 2002 WL 31426654, at *3 (N.D. Ill. Oct. 28, 2002) (*citing Bd. of Trs.*,

*Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)); *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 969-70 (7th Cir. 1998). Finally, even if the witnesses refuse to travel to Illinois to testify, this Court can either view video depositions or read transcripts of the witnesses' testimony. *Household Fin. Serv.*, 1999 WL 782072, at *5. Thus, we find that inconvenience to third parties does not warrant transfer to Colorado.

Next, we consider the interests of the judicial system itself, which primarily relates to the efficient functioning of the courts. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). We consider concerns such as ensuring speedy trials, the relation of the locale to the controversy and the court's familiarity with applicable law. *Heller*, 883 F.2d at 1293 (*citing Coffey*, 796 F.2d at 221). Here, the primary reason to transfer to Colorado is the proximity of the Colorado forum to the events that precipitated this filing. *Paul v. Land's End, Inc.*, 742 F. Supp. 512, 514 (N.D. Ill. 1990). However, we find that this single factor fails to overwhelm other factors supporting retention of jurisdiction in this district. First, there is no indication that these proceedings will be expedited if this case is transferred to Colorado. Second, the Agreement specifies that substantive Illinois law controls its interpretation, (R. 7, Pl.'s Mot. to Remand, Ex. 1, Ex. A, Employment Agreement at 5), and this Court is most familiar with relevant Illinois law. *Nissan*, 2002 WL 31426654, at *3 (holding that "interests of justice" best served by retaining case, based only on court's familiarity with applicable law). Finally, public policy as expressed by both the Supreme Court and the Seventh Circuit support upholding forum selection clauses as the contractual expression of the parties' wishes. *Stewart*, 487 U.S. at 29 (noting that forum selection clause is the central component when considering motion to transfer); *Photogen*, 2001 WL 477226, at *2 (*citing Northwestern*, 916 F.2d at 376). Thus, considering both the convenience of third parties and the interests of justice, we deny Couch's motion to transfer.

## CONCLUSION

For the foregoing reasons, we hold that: (1) Couch's notice of removal was both timely and permissible under the Agreement, and deny RBC's motion to remand (R. 7-1.); and (2) the forum-selection clause is binding on the parties, and deny Couch's motion to transfer, (R. 4-1).

Entered: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

Dated: July 30, 2003